WINIFRED KAO, SBN 241473
GINA SZETO, SBN 284883
ADVANCING JUSTICE - ASIAN LAW CAUCUS
55 Columbus Avenue
San Francisco, CA 94111
Tel.: (415) 896-1701
Fax: (415) 896-1702
winifredk@advancingjustice-alc.org
ginas@advancingjustice-alc.org

CATHA WORTHMAN, SBN 230399
LEWIS FEINBERG LEE & JACKSON, PC
476 9th Street
Oakland, CA 94607
Tel: (510) 839-6824
Fax: (510) 839-7839
cworthman@lewisfeinberg.com

Attorneys for Creditors

*(Represented Creditors listed herein and on signature page)*

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In the Matter of | Case No. 14-15853 |
| BEDFORD CARE GROUP, INC., | Chapter 7 |
| Debtor. | D.C. No. ALC-1 |
| | **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATION OF STEPHANIE COSTA** |
| | [Ex Parte Application; no hearing required. Proposed Order lodged concurrently herewith.] |
| | HONORABLE FREDRICK E. CLEMENT |

1

## I. INTRODUCTION

Creditors Juliet Delos Reyes, Nilo Delos Reyes, Mercy Pineda, Julito Pineda, Gabriel Roque, Nerissa Roque, Henry Alsisto, Esther Alsisto, Cherilyn Linguete, Ronald Linguete, and Yolanda Austriaco (together, "Creditors") seek to examine Debtor Bedford Care Group's former President, CEO, and shareholder, Stephanie Costa regarding the Debtor's assets and property; the sale or transfer of the Debtor's assets and property; the Debtor's actions leading up to and following the filing of Bedford's bankruptcy petition; the Debtor's liabilities and financial condition; the nature and extent of the Debtor's relationship with the two companies now operating the Debtor's former care homes and any insiders; and any other matters that may affect the administration of the Debtor's estate. Because the Creditors' proposed exam falls well within the broad scope and purpose of Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Creditors' application should be granted.

## II. PROCEDURAL HISTORY AND BACKGROUND FACTS

The Debtor operated a residential care home business called Bedford Care Group ("Bedford"). Bedford's business included operations at the following six locations within the Fresno and Clovis area: 1115 E. Pinehurst in Fresno (the "Pinehurst" facility); 272 W. Everglade in Clovis (the "Everglade" facility); 2617 E. Shea Drive in Fresno (the "Shea" facility); 2380 E. El Paso, in Fresno (the "El Paso" facility); 2657 E. Skyview Avenue in Fresno (the "Skyview" facility); and 2846 E. Jon Drive in Fresno (the "Jon" facility). See Declaration of Gina Szeto, below, ("Szeto Decl.") at ¶ 9, Ex. D.

The Debtor's residential care business was a family affair. Stephanie Costa was the Debtor's President and shareholder. Stephanie Costa's mother, Alice Hayes, was the Debtor's Secretary. Stephanie Costa's father, Stephen Costa, was the Debtor's Chief Financial Officer. Szeto Decl. at ¶ 6, Ex. A.

The Creditors were employees who worked as caregivers in Bedford's care homes at various times between May 2008 and April 2013. On February 19, 2013, the Creditors filed individual wage and hour claims with the California Labor Commissioner's Division of Labor Standards Enforcement ("DLSE") against Bedford. *Id.* at ¶ 3. Shortly thereafter, the Labor

Commissioner's Bureau of Field Enforcement ("BoFE") initiated an investigation into the Debtor and Ms. Costa's pay practices. *Id.*

On or about April 25, 2013, based in large part on the information provided by the Creditors, BoFE issued five citations against the Debtor and Stephanie Costa, individually. The citations include unpaid wage, overtime, and meal and rest break premiums payable by statute to the Creditors. *Id.* at ¶ 4. *See* Lab. Code Section 558(a)(3); 1197.1(a)(3). The Debtor and Stephanie Costa appealed the citations. *Id.* at ¶ 5.

The administrative appeal hearing regarding the citations was originally scheduled for early November 2013. That date was postponed and the first half of the administrative appeal hearing regarding the citations ultimately took place from January 27 to February 5, 2014. The second half of the hearing took place on June 16-17, and June 23-26, 2014.[1] *Id.*

In mid-October 2013, a few weeks before the citation hearing was originally scheduled to begin, papers were filed with the California Secretary of State to create two new residential care home companies called Clear View Retirement Group, LLC ("Clear View") and Copper River Retirement Group, LLC ("Copper River"). *Id.* at ¶ 7, Ex. B. Stephanie Costa is designated as the agent of service of process for both entities. *Id.* Alice Hayes is the CEO, President, Vice-President, Secretary and Treasurer for both entities. *Id.* at ¶ 8, Ex. C.

In August 2014, Copper River and Clear View applied for licenses to run all six of the former Bedford care home facilities. *Id.* at ¶ 9, Ex. D. Notwithstanding the change in the name of the operating company, the day to day operations of the care homes have reportedly remained unchanged. *Id.* at ¶ 10, Ex. E.

The Debtor filed its Chapter 7 petition in the instant case on December 8, 2014.

On December 12, 2014, the Labor Commissioner issued its decision upholding over $665,000 in unpaid wages and other penalties owed to the Creditors and the state pursuant to the contested citations. *Id.* at ¶ 11.

The first meeting of Creditors in this case was held on January 15, 2015. Due to time

---

[1] The Creditors' individual wage and hour claims were put on hold to allow the citations case to proceed first. *Id.* at ¶ 5.

3

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATION OF STEPHANIE COSTA

constraints, the meeting was continued to February 27, 2015 before the Creditors had an opportunity to question the Debtor. *Id.* at ¶ 12. The Trustee subsequently postponed the February 27, 2015 meeting and re-calendared it for March 27, 2015 at 10 a.m. *Id.* Because of confusion about the start time, however, the Debtor appeared on March 27, 2015 at 9 a.m. and refused to stay for the scheduled 10 a.m. meeting. As such, the Creditors have not yet had any meaningful opportunity to examine the Debtor. *Id.*

**III.     ARGUMENT**

Pursuant to Rule 2004(a) of the Federal Rules of Bankruptcy Procedure, the Court may order the examination of any entity on the motion of a party in interest. FED. R. BANKR. P. 2004(a). Rule 2004(c) allows movants to compel the production of documents in connection with the examination. FED. R. BANKR. P. 2004(c). An order for a Rule 2004 examination may also be granted *ex parte*. *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993).

Rule 2004(b) provides that a Rule 2004 examination may relate to "the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." FED. R. BANKR. P. 2004(b). Consistent with this expansive language, courts have repeatedly recognized that "the scope of a Rule 2004 examination is exceptionally broad and provides few of the procedural safeguards found in Federal Rule of Civil Procedure 26. [Citation omitted]. Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing expedition.'" *In re North Plaza LLC*, 395 B.R. 113 n.9 (Bankr. S.D. Cal. 2008); *see also In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011) ("The scope of a 2004 examination is 'unfettered and broad' and is akin to a fishing expedition."); *In re GHR Energy Corp.*, 33 B.R. 451, 453-54 (Bankr.D. Mass. 1983) (same). The limiting parameter of a Rule 2004 examination is the proscription against its use for purposes of abuse or harassment, issues properly raised on a motion to quash. *See In re Mittco, Inc.* 44 B.R. 25 (Bankr. E.D. Wis. 1984); *see also* 9 COLLIER ON BANKRUPTCY, ¶ 2004.02[2], at pp. 2004-6 to 2004-7 (Alan N. Resnick & Henry T. Sommer, eds., 16th ed.).

4

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATION OF STEPHANIE COSTA

1  　　　Here, the Creditors respectfully request an order authorizing them to issue a subpoena to examine Stephanie Costa, the Debtor's former president, CEO, and shareholder. The purpose of the examination and related document requests is to investigate the Debtor's assets, property, liabilities, actions, and financial condition, through one of the Debtor's key decision makers and principals. Stephanie Costa's involvement as an administrator and agent for Clear View and Copper River, the two new corporate entities now running the Debtor's former care home businesses, also raises questions about the proper transfer and management of the Debtor's assets and property, as well as the exact nature of the Debtor's relationship with Clear View, Copper River, Stephanie Costa, and her family members. The entanglements between Stephanie Costa, her mother Alice Hayes, the Debtor, and the two new companies, warrant investigation in relation to potential voidable transfers and/or fraudulent activity which could affect the administration of the Debtor's estate.

## IV.　CONCLUSION

　　　This application is made in good faith and reasonable. The request also falls well-within the permissible scope and purpose of Rule 2004. The Creditors' application should therefore be granted.

DATED: April 27, 2015　　　　　　　Respectfully Submitted,

ASIAN AMERICANS ADVANCING JUSTICE –
ASIAN LAW CAUCUS

LEWIS FEINBERG LEE & JACKSON, PC

By: _____/s/ Catha_____
　　Winifred Kao
　　Gina Szeto
　　Catha Worthman

*Counsel for Creditors Juliet Delos Reyes, Nilo Delos Reyes, Mercy Pineda, Julito Pineda, Gabriel Roque, Nerissa Roque, Henry Alsisto, Esther Alsisto, Cherilyn Linguete, Ronald Linguete, and Yolanda Austriaco*

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATION OF STEPHANIE COSTA